UNITED STATES DISTRICT COURT
NORTH DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**JENNIFER RUSS,**              CASE No.

   Plaintiff,

v.

**WILLIAM BARR, in his Official Capacity
as UNITED STATES ATTORNEY GENERAL,
and DIRECTOR of the UNITED STATES
DEPARTMENT OF JUSTICE,**

   Defendant.
_____/

## COMPLAINT

Plaintiff, JENNIFER RUSS, hereby sues Defendant, WILLIAM BARR, in his Official Capacity as UNITED STATES ATTORNEY GENERAL, and DIRECTOR of the UNITED STATES DEPARTMENT OF JUSTICE, and alleges:

## JURISDICTION

1. This is an action brought under 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

2. This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, JENNIFER RUSS, has been a resident of the State of Florida and employed by Defendant. Plaintiff is a member of a protected class because of her sex (female) and because she reported unlawful employment practices and has been retaliated against thereafter.

4. At all times pertinent hereto, Defendant, WILLIAM BARR, in his Official Capacity as UNITED STATES ATTORNEY GENERAL, and DIRECTOR of the UNITED STATES DEPARTMENT OF JUSTICE, has been organized and existing under the laws of the United States. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began her employment with Defendant on July 31, 2011 and, at all times pertinent to this action, has worked as a Special Investigative Support Technician at Defendant's Federal Bureau of Prisons Correctional Institute in Marianna, Florida.

7. Plaintiff has been and continues to be subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of her sex (female) and has been retaliated against after reporting this discrimination.

8. During her employment with Defendant, Defendant twice evaluated Plaintiff's performance as outstanding, Defendant awarded Plaintiff for her stellar performance with two (2) Quality Step Increases and was also given the Time Off Award and Plaintiff has never been reprimanded throughout her employment with Defendant.

9. Throughout her career with Defendant, Captain Shawn Pryor made sexually charged comments towards Plaintiff and was told on three separate occasions by Associate Warden William Mackelburg to apologize to Plaintiff for his inappropriate comments.

10. On or around September 19, 2017, Plaintiff's first day back to work from maternity leave, Captain Pryor escalated from verbal to physical when he inappropriately and without permission groped Plaintiff's waist.

11. Specifically, Captain Pryor slid next to Plaintiff's left side, extended his arm around Plaintiff's right side, grabbed her duty belt near Plaintiff's right buttock and started shaking it.

12. Plaintiff immediately returned to her office and sent a ring-back for Lieutenant (Lt.) Donald Newsome, Plaintiff's direct supervisor, to call her once he was off his phone call so Plaintiff could report the behavior. Upon the callback, Lt. Newsome instructed Plaintiff to write a memo about the incident and submit it to Lt. M. McCullough who presides over staff investigations.

13. That same day, Plaintiff drafted and submitted a memo of the incident to Lt. McCullough and also gave verbal statements to Lt. McCullough and Warden Bruce Blackmon.

14. The Warden, however, advised Plaintiff to sleep on it and let him know what she wanted done the next day.

15. On September 20, 2017, the next day, Plaintiff e-mailed Warden Blackmon stating she felt it necessary to go through with a referral for investigation. Plaintiff further elaborated that prior talks with Captain Pryor from Associate Warden Mackelburg had obviously fallen on deaf ears as Pryor now escalated his behavior.

16. On or around October 17, 2017, Captain Pryor called Plaintiff and demanded that she go and retrieve a shank found in the Mohawk Unit and fill out a chain of custody form. Plaintiff asked if she could ask Lt. Newsome to retrieve the shank as Plaintiff was leaving shortly due to a family medical emergency and was

4

attempting to finish all of her work before she left. Lt. Newsome was already heading in that direction.

17. Captain Pryor responded with threats to Plaintiff's employment including without limitation advising Plaintiff to do whatever she thinks her career can handle.

18. That same day, Plaintiff reported this retaliatory threat to Lt. M. McCullough via phone and e-mail.

19. On October 19, 2017, Plaintiff drafted and submitted a Memo documenting the retaliation.

20. On October 20, 2017, Plaintiff met with Associate Warden of Programs (AWP) Johnny Butts with Union Official Harry "Eddie" Porter. In the meeting, Plaintiff asked for Captain Pryor to be removed from Plaintiff's direct line of supervision. Butts told Plaintiff he would get back to her and provided her with Defendant's Anti-Harassment Policy.

21. After hearing nothing from AWP Butts for five (5) days, Plaintiff e-mailed Butts on October 25, 2017. AWP Butts advised Plaintiff that Captain Pryor would not be removed from her chain of command.

22. On October 26, 2017, Union President Jeremy Jenkins contacted Warden Blackmon to express concern about how Captain Pryor's disciplinary action or lack thereof was being handled.

23. Allowing Captain Pryor to retain his position over Plaintiff given the sexual nature of his inappropriate conduct and retaliation towards Plaintiff was believed to be in violation of Defendant's policy regarding sexual harassment.

24. The policy states "to the greatest extent practical, the desires of the alleged victim and any adverse impact to them will be taken into consideration." The schedule for disciplinary actions Attachment A also stipulates:

> While the principles of progressive discipline are normally applied, it is understood that there are offenses so egregious as to warrant severe sanctions for the first offense, up to and including removal. For example, if an incident is of a *sexual nature or* includes *sexual harassment* or is a criminal matter, the penalty *must* be more severe. This is especially true in cases where there is no indication that the employee would be corrected by a lesser penalty, or if the offense is of such a nature that reoccurrence could jeopardize security or bring disrepute on the Bureau of Prisons. (emphasis added).

25. Upon information and belief, Defendant's agent Regional Director (RD) Jeff Keller had previously been informed by National Security- Treasurer of the Union, Jeff Godwin, of Captain Pryor's behavioral issues and conduct. Further, prior to Plaintiff's incident with Captain Pryor, Godwin had advised RD Keller that Captain Pryor presented a risk of creating a situation for an employee to be harmed

by him or cause him harm and Defendant's inaction created the perfect storm for Plaintiff to be subjected to this unlawful behavior.

26. On or around April 2, 2018, in continued retaliation for her reporting of Defendant's behavior, Defendant reassigned several of Plaintiff's duties to Lt. Sherman. Specifically, Lt. Sherman handpicked the programs that had been well managed by Plaintiff and assigned them to himself and gave Plaintiff several programs that had been mismanaged and required extensive work including without limitation the ION Program. This reassignment was retaliatory and resulted in Plaintiff having to perform additional work that she would not normally have had to perform.

27. Plaintiff made her objections known directly to Lt. Sherman when the change was made. Nothing was done to rectify this problem.

28. Defendant then allowed Captain Pryor to retire on his own terms without being subjected to proper disciplinary action for his unlawful treatment of Plaintiff.

29. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## <u>SEX DISCRIMINATION</u>

30. Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

31. This is an action against Defendant for discrimination based upon sex brought under 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981a.

32. Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of Defendant who are male and has been subject to a hostile work environment with no adequate remedial action taken by Defendant to rectify a known problem. The comments and actions taken against Plaintiff based on her sex were frequent, offensive, severe and adversely affected Plaintiff's ability to perform her job duties with Defendant.

33. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

34. Furthermore, Defendant knowingly condoned and ratified the differential treatment and hostile work environment to which Plaintiff was subjected

as more fully set forth above because it allowed the actions against Plaintiff and participated in same.

35. Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

36. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a sex-based nature and in violation of the laws set forth herein.

37. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

38. The events set forth herein led, at least in part, to Plaintiff's reassignment of duties and continued disparate treatment.

39. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender in violation of 42 U.S.C. §2000e et seq..

40. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay,

interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

## COUNT II
## **RETALIATION**

41. Paragraphs 1 through 29 are re-alleged incorporated herein by reference.

42. This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a.

43. Defendant is an employer as that term is used under the applicable statutes referenced above.

44. The foregoing unlawful actions by Defendant were purposeful.

45. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

46. The events set forth herein have led, at least in part, to adverse actions against Plaintiff as defined in the applicable statutes.

47. Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

48. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

    (a)    that process issue and this Court take jurisdiction over this case;

    (b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

    (c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record by CM/ECF this 21st day of August, 2019.

/s/ Marie A. Mattox
Marie A. Mattox